**AUTOMOBILE TRANSPORT CHAUFFEURS, DEMONSTRATORS & HELPERS LOCAL UNION NO. 604, affiliated with The International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, a voluntary unincorporated association, Plaintiff,**

v.

**PLACKE CHEVROLET COMPANY, INC., a Missouri corporation, Defendant.**

**No. 73 C 80(3).**

United States District Court, E. D. Missouri, E. D.

Aug. 15, 1974.

S. Sheldon Weinhaus, Levin & Weinhaus, St. Louis, Mo., for plaintiff.

Robert B. Vining, Donald J. Meyer, and Thomas N. O'Donnell, Clayton, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This action is before· the Court for a decision on the merits following the trial to the Court sitting without a jury.

Plaintiff, Automobile Transport Chauffeurs, Demonstrators and Helpers, Local Union No. 604, (hereafter Union) brought this three count action against the defendant. Counts I and II allege defendant's failure to participate in the resolution by arbitration of certain labor grievances and seek an order compelling defendant to participate in the arbitration, to abide by the arbitrator's decision and to pay the necessary fees and expenses of the plaintiff's attorney and of the arbitrator. Count III alleges that a ̇ valid and binding arbitration award was issued and seeks that such award be confirmed.

The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

### Findings of Fact

1. This Court has jurisdiction over the subject matter of this suit and the parties hereto, pursuant to the provisions of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S. C. § 185.

2. Plaintiff is a voluntary unincorporated association comprised of persons

employed in the distribution and sale of goods and materials in interstate commerce, and represents for collective bargaining purposes employees in an industry affecting commerce within the meaning of and as defined in Sections 2(3) and 2(5) of said Act (29 U.S.C. § 152(3) and (5)), and that said labor organization represents, and represented at all times material hereto, the salesmen employed by defendant, which employees are engaged in the sale and distribution of goods and materials affecting commerce within the meaning of Section 2(7) of said Act (29 U.S.C. § 152(7)); and plaintiff labor organization maintains its principal office and transacts business within the territorial jurisdiction of this Court.

3. Defendant is a corporation duly organized and existing under the laws of the State of Missouri and was at all times hereinafter mentioned engaged in the distribution and sale of new and used motor vehicles and trucks within the territorial jurisdiction of this Court; that defendant has at all times material hereto engaged in interstate purchases and sales of products, and constitutes an employer in an industry affecting commerce and whose activities affect commerce, all within the meaning of Sections 2(2), 2(6), 2(7) and 301(a) of said Act. (29 U.S.C. §§ 152(2), 152(6), 152(7) and 185(a)).

4. Plaintiff was at all times material hereto and is now the certified collective bargaining representative of defendant's new and used car salesmen employed at all relevant times hereto by the defendant within the territorial jurisdiction of this Court.

5. On May 4, 1972, the Union and employer entered into a collective bargaining agreement for a three year term, commencing May 1, 1972, covering a unit of automobile salesmen. At the time defendant was a General Motors franchised Chevrolet dealer, however, on or about January 10, 1973, the employer sold all its assets to a third party and gave up its GM franchise.

6. Article IX of said collective bargaining agreement provides the following:

## ARTICLE IX
### GRIEVANCE PROCEDURE AND STRIKE CLAUSE

All grievances and disputes between the Parties shall be subject to the following procedure. During the term of this contract there shall be no strike or lockout except as provided below.

All grievances shall be presented in writing within ten (10) working days of their occurrence, except grievances over discharge which shall be presented within five (5) working days.

If the Union and the Employer cannot settle the dispute within ten (10) working days of its being presented in writing, either party may request arbitration. Each party shall within two (2) working days of such request for arbitration, alternately strike names from the permanent panel of:

> John Dunsford
> Father Leo Brown
> A. Lee Belcher
> Gerald Cohen
> William Stix

The last named person left on the list shall be the impartial arbitrator. The arbitrator shall hear the case and render a decision within thirty (30) days of being appointed. If either side does not promptly, within two (2) working days strike arbitrators from list as called for herein, the other party may select an arbitrator from the panel.

The decision of the arbitrator, within such 30 day period, shall be final and binding. The arbitrator shall not have the power to add or delete any provisions to the contract in rendering his decision.

In the event that an award of an arbitrator is not forthcoming within thirty (30) days as set forth in this ARTICLE IX and the parties do not mutually extend the time, or if there

is an award and no compliance, the Union shall be able to go on strike after twenty (20) days written notice of its intention to strike.

The Employer will pay for the cost of the arbitrator. The Employer will pay for the cost of the transcript and reporter if it orders or requests a reporter.

The parties may jointly waive in writing the time limits set forth herein.

7. Pursuant to the above grievance procedure employees of the defendant within the collective bargaining unit represented by plaintiff, filed complaints and grievances Nos. 6762, 6774, 6775, 6780, 6781, 7461, 7462, (such grievances constitute same in Counts I and II herein), against the defendant for wrongful payroll deductions and failure of commission payments owed to grievant-employees under the terms of the aforesaid collective bargaining agreement. Thereafter, with the above grievances not reaching a satisfactory disposition, the plaintiff requested arbitration.

8. Defendant refused to engage in the strike-out procedure provided in the contract. Though the contract does provide for unilateral selection of an arbitrator, the Union did not do so, rather it sought an order compelling defendant to proceed under the contractual framework for arbitration.

9. On or about December 14, 1972, employee Lawrence W. Stenger was discharged from his position as a salesman with the defendant. A grievance was filed but the dispute could not be resolved. Thereafter, by letter dated December 26, 1972, and received on December 27, 1972, Gerald Cohen was appoint-

ed as arbitrator of the dispute. The hearing took place on January 17 and 18, 1973.[1] At the conclusion of the hearing the parties orally agreed to extend the time of the decision and award to February 17, 1973[2] and briefs were to be filed on or by January 25, 1973. However, no written agreement concerning such extension was executed. On February 16, 1973, Arbitrator Cohen issued his order and award reversing the employer's discharge action, ordering that the grievant be reinstated and reserving jurisdiction. On March 12, 1973, the arbitrator issued a supplementary opinion fixing the sums awarded.

10. On February 16, 1973, the defendant notified the arbitrator and plaintiff that he objected to the extension and late award and would not be bound by the award.[3]

### Conclusions of Law

■ The pivotal issue concerning Counts I and II is whether the plaintiff Union was required to unilaterally proceed to arbitration upon the defendant employer's refusal to strike names from the list of arbitrators. The defendant argues that the Union's failure to proceed with an ex parte arbitration proceeding would bar its attempt to compel arbitration via a Court order. Such argument is not well taken.

The pertinent portion of the collective bargaining agreement is the following: "If either side does not promptly, within two (2) working days strike arbitrators from list as called for herein, the other party *may* select an arbitrator from the panel." This above language does not provide for a unilateral arbitration proceeding. At best it provides a non-

---

1. The three week hiatus between the date of appointment of the arbitrator and the hearing was because the employer requested and was granted two separate continuances in the hearing.

2. The Union contends that the parties orally agreed to commence the thirty day period from the date of the hearing. The Employer contends that no such extension was agreed upon. The Arbitrator Cohen un-

equivocally states that the parties did orally agree to commence the thirty-day period from the time of the hearing.

3. The Employer avers that his objection as to timeliness was mailed before the receipt of the arbitration award on February 16, 1973 and the postmark date so indicates. Such objection was not received by the arbitrator until February 20, 1973.

obligatory mode of selection of an arbitrator by one party.

The defendant urges that the case of Sam Kane Packing Co. v. Amalgamated Meat Cut. & B.W., 477 F.2d 1128 (5th Cir., 1973), stands for the proposition that if a neutral arbitrator is selected, then an ex parte arbitration award is viable. However, the contract language in *Sam Kane* specifically provided that an arbitrator appointed by one party could render final and binding decisions. This is not the situation herein.

■ Counts I and II involve disputes over deductions and commissions. Article IX of the collective bargaining agreement begins with the following declaration: "All grievances and disputes between the Parties shall be subject to the following procedure." This Court finds that the disputes described in Counts I and II should be settled in accordance with the procedure set out in Article IX. Accordingly, the defendant shall proceed to follow said procedure.[4]

■ The epicenter of the Count III action is whether the thirty day provision in the contract would, when not complied with, invalidate an otherwise proper arbitration award. From the outset, a rubric which permeates federal labor law must be noted. Once a labor dispute has been submitted to the arbitrator, courts should be reluctant to interfere with his award. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); Lodge No. 725, Int. Ass'n of Mach. v. Mooney Aircraft, Inc., 410 F.2d 681 (5th Cir. 1969). With this presumption in mind this Court shall consider the award's validity.

The evidence indicates that the parties orally agreed to extend the thirty day period to February 17, 1973. However, no written confirmation of this waiver was ever executed.[5] Briefs were to be filed on or before January 25, 1973, the last day of the first thirty day period, and such were filed. Acting in good faith, the arbitrator made his decision on February 16, 1973, and on the same day the defendant employer mailed its objection to the lateness of the award.

■ The defendant argues that the thirty day rule without a written joint extension constitutes a bar to the award. However, no support for this position can be found in the collective bargaining agreement. Said agreement does not provide for the automatic invalidation of a late award. This Court finds that the better rule for such automatic invalidation is if the parties intend to provide for such they must do so in unequivocal language. Local Union 560, Int. Bro. of Team. v. Anchor Motor Frgt., Inc., 415 F.2d 220, 226 (3rd Cir., 1969).

■ Here the employer has shown no injury from the delay or any other special circumstances which would adversely affect it. Moreover, it cannot be said that the delay was so unreasonable particularly in light of the facts that the employer unilaterally caused two delays within the first thirty day period and that he orally agreed to an extension. Accordingly, the arbitrator's award was binding on the parties and is confirmed.

4. The defendant at trial attempted to prove that the disputed commissions had been paid in full, however, such matters are the proper subjects of arbitration.

5. The contract provides that time limits were to be waived jointly in writing.